TIMOTHY M. BURGESS
United States Attorney

KEVIN FELDIS
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 W. 7th Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel.: 907/271-5071
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GABRIEL CLARK-AIGNER, ) <br> ) <br> Defendant. ) <br> _____ ) | No. A02-007 CR (JWS) <br><br> GOVERNMENT'S OPPOSITION <br> TO MOTION PURSUANT TO <br> 28 U.S.C. § 2255 |

The United States, by and through the United States Attorney for the District of Alaska, opposes Gabriel Clark-Aigner's petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Mr. Clark-Aigner's petition should be denied because: (1) his petition is untimely and time barred under the AEDPA; (2) he waived the right to collaterally attack his conviction and sentence

in his plea agreement; and (3) his ineffective assistance of counsel claim has no support in the record and lacks any substantive merit.

I.  **INTRODUCTION**

    A.  **Procedural Background**

Mr. Clark-Aigner was a leader of an Anchorage street gang that went by the name of Good Boys Tres Surenos or "GTS." During January 2001, as part of his leadership activities in GTS, Mr. Clark-Aigner participated in the planning and commission of one armed robbery and one attempted armed robbery of the Spenard Motel located at 3960 Spenard Road, Anchorage, Alaska. GTS gang members planned and committed these and other robberies as part of their membership in the gang. In fact, those seeking to become part of the GTS gang were required to commit crimes to gain membership. Mr. Clark-Aigner and other GTS gang members also carried, used and brandished firearms. During a third robbery of the Spenard Motel, in late January, an individual seeking membership in GTS was shot multiple times and severely injured.

In January 2002, Mr. Clark-Aigner was named in an eleven count indictment in which he was charged in count 1 with conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a); in counts 2 and 4 with interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a); in

counts 3, 5, and 7 with brandishing a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii) and 924(c)(1)(C); in count 6 with attempt to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a); and in counts 8, 9, and 11 with transferring a firearm to be used to commit a crime of violence, in violation of 18 U.S.C. § 924(h).

Pursuant to a plea agreement entered into with the United States, Mr. Clark-Aigner pled guilty to counts 2, 3, 4, and 5 of the indictment and admitted the factual basis for his guilty pleas.

The plea agreement also contained a waiver of collateral attack rights that states as follows:

> Furthermore, the defendant also knowingly and voluntarily agrees to waive his right to collaterally attack his conviction and/or sentence. The only exceptions to this collateral attack waiver are as follows: 1) any challenge to his conviction or sentence alleging ineffective assistance of counsel-- based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by him by the time the court imposes sentence; and 2) a challenge to the voluntariness of his guilty plea.
> [Plea Agreement p. 11-12].

In the plea agreement, Mr. Clark-Aginer was explicitly and repeatedly advised that his sentence according to the sentencing guidelines would be in the range of 36 to 38 years (441-455 months), and that he faced a statutory mandatory

minimum sentence of 32 years in prison. [Plea Agreement at 15-16, 17-19, 30-31]. At his change of plea hearing, the court specifically informed the defendant that he faced a mandatory minimum sentence of 32 years. [COP audio at 11:56 et. seq.]. Mr. Clark-Aigner was also notified that, regardless of any substantial assistance departure he might possibly receive, his sentence would never be less than 25 years, and the United States would withdraw from the plea agreement if the Court sought to sentence him to anything less. [Plea Agreement at 3, 10, 14, 15, 19, 34]. By negotiating the dismissal of Counts 1, 7, 8, 9 and 11, Mr. Clark-Aigner avoided going to trial and facing the potential of at least an additional 25 year mandatory consecutive prison sentence.

Prior to sentencing, the United States filed a sentencing memorandum and a separate motion recommending a substantial assistance departure. Defendant Clark-Aigner likewise filed a sentencing memo. All of these documents again made it clear that Mr. Clark-Aigner could not be sentenced to anything less than 25 years in prison. [Dockets 221, 227 & 242]. On August 7, 2002, the district court sentenced Mr. Clark-Aigner to 300 months in prison. [Dockets 245 & 246].

At his change of plea hearing, Mr. Clark-Aigner told the court that he was satisfied with the representation provided by his counsel and that he understood the plea agreement and the possible sentencing consequences of his plea. At no

time prior to signing the plea agreement, prior to pleading guilty, or prior to sentencing did Mr. Clark-Aigner show any misunderstanding about the fact that he would be sentenced to a minimum of 25 years in prison, and possibly much longer. Nor did he indicate that he was dissatisfied with counsel.

After Mr. Clark-Aigner was sentenced, he did not file a direct appeal. His judgment became final on August 17, 2002, ten days after being entered by the court. Nearly three years later, Mr. Clark-Aigner filed his first and only motion under Section 2255, asking the court to vacate, set aside or correct his sentence. He signed his motion on June 8, 2005, and the court file stamp indicates it was received on June 10, 2005. On December 7, 2005, attorney Scott Sterling, on behalf of Mr. Clark-Aigner, filed a motion for an evidentiary hearing.

### B.  The Present Claim

As outlined by Mr. Sterling, Mr. Clark-Aigner's Section 2255 petition alleges that his prior counsel, Mathew Claman, provided ineffective assistance of counsel by: (1) failing to adequately communicate with and/or explain the implications, in terms of sentence, of proceeding to trial versus negotiating a Rule 11 plea agreement, and (2) not adequately communicating with him concerning the actual or probable risk that he would receive a sentence in excess of ten years.

Mr. Clark-Aigner does cite to any support in the record for his claims. To

the contrary, Mr. Sterling's affidavit indicates that Mr. Claman states he enjoyed adequate attorney-client relations with Mr. Clark-Aigner and that Mr. Clark-Aigner understood his Rule 11 plea agreement and its implications.

## II. ARGUMENT

### A. Clark-Aigner's Petition is Time Barred under the AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 established a one year period of limitations for collateral relief under 28 U.S.C. § 2255. The limitations period runs from the latest of several potentially applicable dates. Most commonly, as is the case here, the limitation period starts when the judgment of conviction against a defendant becomes final. Mr. Clark-Aigner's conviction became final no later than August 17, 2002, ten days after the judgment was entered.[1] This is when the time for filing a direct appeal expired under Rule 4 of the Federal Rules of Appellate Procedure. See Griffen v. Kentucky, 479 U.S. 314, 321 n. 6 (1987) (judgments become final when the possibility of further direct appellate review is exhausted).

In response to an order to show cause issued by the Court regarding the statute of limitations, the defendant responded that he did file a timely petition in

---

[1] It is arguable that Mr. Clark-Aigner's judgment of conviction became final on August 7, 2002, when the judgment was entered, because he had waived his direct appellate rights and thus the possibility of direct appellate review was exhausted at that time.

June of 2003, and that it must have gotten misplaced or mishandled in the prison mail. Mr. Clark-Aigner provided no evidence to support his claim. Likewise, he offers no reasonable explanation as to why he waited until August of 2005 to file his current petition. It is well established that a defendant must exercise due diligence in both discovering the basis of his claim and in meeting the statute of limitations. See e.g., Montenegro v. United States, 248 F.3d 585 (7th Cir. 2001); Bunney v. Mitchell, 241 F.3d 1151 (9th Cir. 2001).

Moreover, it is reasonable to believe that if the defendant had actually attempted to file an earlier Section 2255 motion, he would have realized that his alleged prior petition had not been filed well before August 2005, and would then have taken steps to notify the court or to re-file his petition. Instead, Mr. Clark-Aigner made no efforts to follow-up on this alleged initial petition. Even if Mr. Clark-Aigner could prove that his segregation or the prison mail system was somehow at fault for the court not receiving his alleged earlier petition, he could not show, and has not attempted to show, that such alleged impediment continued such that he could not file his current motion until August 2005.

If all a defendant had to do to overcome the AEDPA's one year limitations period was alleged that he had filed an early petition, without any proof, then the limitations period would soon become meaningless. This is particularly true

where, as here, a defendant waits more than another year to follow-up.

Mr. Clark-Aigner's Section 2255 petition must be denied because it was not filed until June of 2005, nearly two years after the limitations period expired. He has made no showing that the government imposed any impediment to him meeting this filing deadline. His motion is thus statutorily time barred and must be denied.

### B. Mr. Clark-Aigner Waived His Right to Collaterally Attack his Sentence

Mr. Clark-Aigner entered into a plea agreement that specifically and repeatedly advised him that his sentencing range was in excess of 35 years, with a statutory mandatory minimum of 32 years. The terms of Mr. Clark-Aigner's agreement with the government also mandated that even if the government moved for a substantial assistance departure, in no event would he receive a sentence of less than 25 years. If a sentence of less than 25 years was considered, the plea agreement made it clear that the United States would withdraw from the agreement and pursue the case to trial.

Mr. Clark-Aigner knowingly, intelligently and voluntarily entered into this plea agreement, understanding its terms. [Plea Agreement at 30-34, 35, and COP hearing audio at 11:55 et seq.]. Mr. Clark-Aigner also derived a direct and

substantial benefit from entering into such an agreement. Not only did he avoid trial, but the United States dismissed multiple felony counts, including a count that carried the penalty of an additional statutory mandatory consecutive 25 years in prison.

As part of the plea agreement, Mr. Clark-Aigner also made an express written waiver of the right to collaterally attack his conviction and sentence. [Plea Agreement at 11-12, 32-33]. The only exceptions to this waiver were for challenges alleging ineffective assistance of counsel based upon information **not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by him by the time the court imposed sentence**, and for challenges to the voluntariness of his guilty plea. [Id.].

Mr. Clark-Aigner's collateral attack waiver bars his current claims. Although he alleges ineffective assistance of counsel, a category potentially excluded from his appellate waiver, the two arguments he makes in his petition are on their face included within the appellate waiver because they were both known to the defendant and reasonably should have been known to him by the time the court imposed his 25 year sentence. Moreover, both these arguments are patently unbelievable and flatly contradicted by the record in this case.

There was never any doubt that Mr. Clark-Aigner would receive at least 25

years in prison. The defendant acknowledged his understanding of this fact when he signed the plea agreement. It was addressed again at his change of plea hearing. [COP hearing audio at 11:56 et seq.]. Finally, prior to sentencing, the government filed a sentencing memorandum and a motion for a substantial assistance departure which both reiterated that Mr. Clark-Aigner could not be sentenced to anything less than 25 years. At no time did Mr. Clark-Aigner demonstrate any misunderstanding about the lengthy prison term he faced.

In his Section 2255 motion, and likewise in his request for an evidentiary hearing, Mr. Clark-Aigner does not even address the fact that he waived his rights to collaterally attack his sentence. Appellate waivers, however, have been routinely enforced. "The right of appeal, as we presently know it in criminal cases, is purely a creature of statute..." United States v. Navarro-Botello, 912 F.2d. 318, 321 (9th Cir. 1990) cert. denied, 112 S.Ct. 1488 (1992). Accordingly, the Ninth Circuit Court of Appeals regularly enforces "knowing and voluntary waivers" of appellate rights in criminal cases when they are part of negotiated guilty pleas. United States v. Michlin, 34 F.3d 896, 898 (9th Cir. 1994); United States v. Jeronimo, 2005 WL 418560 (9th Cir., February 23, 2005); United States v. Pruitt, 32 F.3d 431, 433 (9th Cir. 1994); United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir.) cert. denied, 508 U.S. 979, 113 S.Ct. 2980, 125 L.Ed.2d 677

(1993).

Mr. Clark-Aigner confirmed that he understood he was waiving his right to collaterally attack his sentence when he entered into the plea agreement.

> I knowingly and voluntarily waive my right to collaterally attack any aspect of my conviction or sentence, except for a challenge based upon ineffective assistance of counsel -- based on information not now known by me and which, in the exercise of due diligence, could not be known by me by the time the court imposes the sentence-- which affected either my guilty plea or the sentence imposed by the court. [Plea Agreement at 32-33].

The defendant also acknowledged that he was satisfied with his counsel and understood both the sentencing guideline and statutory elements that would affect his sentence:

> I am fully satisfied with the representation given me by my attorney. We have discussed all possible defenses to the charges. He has investigated my case and followed up on any information and issues I have raised with him to my satisfaction and he has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have discussed how my sentence will be calculated under the United States Sentencing Commission Guidelines as well as the statutes applicable to my offense and any other factor that will affect the sentence calculation in my case. We have also discussed the sentencing estimates prepared by the government contained in this agreement. [Plea Agreement at 33].

In addition, at his change of plea hearing, the defendant reviewed the plea agreement and then acknowledged to the court that he had read and signed his plea

agreement, understood it, and had discussed it with his attorney. There is absolutely no basis for Mr. Clark-Aigner to now claim that he did not adequately understand the sentencing implications of signing his plea agreement and subsequently pleading guilty or the risk that he would receive a sentence of more than ten years. The plea agreement made it very clear that the defendant faced a minimum of 25 years in prison. At the change of plea hearing, the court likewise advised the defendant that he faced mandatory minimum sentences of 25 plus 7 years. [COP audio at 11:56 et. seq.]. The government's sentencing papers, and even Mr. Clark-Aigner's own sentencing memorandum, likewise confirmed that nothing less than 25 years was possible. [Docket #221].

Mr. Clark-Aigner's waiver of rights to collaterally attack his conviction forecloses the type of "ineffective assistance" claim raised here that is based upon information known to the defendant at the time of sentencing.

C.  **Defendant's Ineffective Assistance Claim is Without Merit**

Finally, even if the Court were to consider Mr. Clark-Aigner's claim that his attorney: (1) failed to adequately communicate with him and/or explain the implications, in terms of sentence, of proceeding to trial versus negotiating a Rule 11 plea agreement, and (2) did not adequately communicate with him concerning the actual or probable risk that he would receive a sentence in excess of ten years,

it could quickly conclude that these claims were unsupported and without merit.

As stated above, the plea agreement, the court, defense counsel and all the sentencing documents made it clear that Mr. Clark-Aigner faced a minimum sentence of 25 years. Based upon its conversation with Mr. Clark-Aigner, the court found that he understood the plea agreement and that his guilty pleas were knowing, intelligent and voluntary. [COP audio].

Under the familiar test set forth in Strickland v. Washington, 466 U.S. 688, 687, 104 S.Ct. 2052, 2064 (1984), a defendant claiming ineffective assistance of counsel must establish that counsel's performance was deficient and that the deficiency prejudiced him. In order to meet the first prong of the test a defendant must identify the specific acts or omissions that allegedly resulted from a failure of reasonable professional judgment. Id. at 690. The defendant is required to point to specific errors and omissions in the record. United States v. Johnson, 820 F.2d 1065, 1073 (9th Cir. 1987).

> The essence of an ineffective assistance of counsel claim is that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."...in establishing prejudice [the defendant]"must show that

> there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." Counsel's errors must be "so serious as to deprive defendant of a fair trial, a trial whose result is reliable."

Williams v. Calderon, 52 F.3d 1465, 1469 (9th Cir. 1995). Moreover, "where the ineffective assistance claim is based on counsel's failure to investigate or put on specific evidence, the defendant must make specific allegations about the content of the proposed testimony in order to show how the failure to present that evidence proves prejudice." United States v. Dalton, 785 F.Supp. 126, 128 (D. Montana 1990).

Here, Mr. Clark-Aigner fails to point to any acts or omissions that resulted from a failure to exercise reasonable and professional judgment on the part of Mr. Claman, his attorney. To the contrary, all the facts developed in the case, and reviewed by the parties, showed that Mr. Clark-Aigner was guilty of the charged offenses, and if he proceeded to trial, would have faced a sentence 25 to 40 years longer than that which was imposed. His decision to negotiate a plea agreement, which included his cooperation and the dismissal of charges, appears to have been

well advised. Defendant has made no allegation, much less a showing, to the contrary.

Equally as significant is the fact that the defendant's claim that he did not understand the sentencing implications of signing the plea agreement and pleading guilty are directly undermined and contradicted by everything in the record of this case. Both the plea agreement and the record of the change of plea hearing demonstrate that Mr. Clark-Aigner was repeatedly advised that he faced a minimum of 25 years in jail, very likely more, and that he acknowledged understanding this sentencing reality. Mr. Clark-Aigner's own sentencing memorandum, moreover, reiterated that he could be sentenced to <u>no less than 25 years</u>, and accordingly recommended and requested a 300 month sentence. [Docket # 221].

Even defendant's own motion for an evidentiary hearing concedes, as it must, that Mr. Claman believes he adequately advised Mr. Clark-Aigner and that Mr. Clark-Aigner understood the sentence which he faced. [Motion for Evidentiary Hearing at 1-2].

Turning to the second <u>Strickland</u> prong, Mr. Clark-Aigner can likewise make no showing of prejudice. The fact remains that the evidence against him

was strong. In fact, his co-defendant and brother, Timothy Beckett, proceeded to trial and was convicted. The fact also remains that lengthy mandatory minimum sentences apply by statute to the offenses of which Mr. Clark-Aigner was convicted. Mr. Clark-Aigner understood that even under the best of outcomes at sentencing, there was never a possibility that he would receive anything less than 25 years in prison for the crimes he committed.

## CONCLUSION

The defendant's claims are time barred, waived and without merit. He has made no showing that would entitle him to a hearing. Accordingly, for all of the above reasons, the government respectfully requests that this court deny defendant's motion for a hearing and likewise deny defendants petition under 28 U.S.C. §2255.

RESPECTFULLY SUBMITTED this 30th day of December, 2005, at Anchorage, Alaska.

TIMOTHY M. BURGESS
United States Attorney

KEVIN FELDIS
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I declare under penalty of perjury that a true and correct copy of the foregoing was served upon counsel of record via:

( X) FAX & U.S. Mail

Scott Sterling
Attorney at Law
851 E. Westpoint Drive, Ste. 201
Wasilla, AK 99654
FAX: 907-376-8078

Executed at Anchorage, Alaska on Dec. 30, 2005

*/s/ Kronin*

Office of the United States Attorney